UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RYAN M. DURYEA,

                                                   COMPLAINT
                                                   INDEX NO.

                Plaintiff,

vs.

THE COUNTY OF LIVINGSTON, THE LIVINGSTON
COUNTY SHERIFF'S OFFICE, SHERIFF JOHN M. YORK,
INVESTIGATOR RON HUFF, DEPUTY BOE
LANGLESS, DEPUTY DANIEL RITTENHOUSE,
DEPUTY WILLIAM BAKER, MAJOR RAY ELLIS,
DEPUTY ANDREW EICHHORN, DEPUTY MICHAEL
ANNE, AND OTHER KNOWN OR UNKNOWN
MEMBERS OF THE LIVINGSTON COUTY SHERIFF'S
OFFICE.

                               Defendants.
_____

      Plaintiff, RYAN M. DURYEA, by his attorney, Jeffrey Wicks, PLLC, for his Complaint against Defendants, alleges as follows:

### PARTIES

1.     At all times herein alleged, Plaintiff RYAN M. DURYEA was and is a resident of the County of Livingston, State of New York, currently residing at 7336 Stone Hill Road, Town of Livonia, State of New York 14487.

2.     Upon information and belief, at all times herein alleged, Defendant, COUNTY OF LIVINGSTON (the "COUNTY" or "LIVINGSTON COUNTY"), was and is a municipal corporation duly organized and existing under the laws of the State of New York, and located in the State of New York with a principal place of business at 6

1

Court Street, Town of Geneseo, State of New York 14454.

3.   Upon information and belief, at all times herein alleged, Defendant LIVINGSTON COUNTY SHERIFF'S OFFICE ("LCSO") has and still does maintain a Sheriff's Department and the Defendant LCSO, has duly appointed police officers, pursuant to New York law and mandate of the County of Livingston.

4.   Upon information and belief, at all times herein alleged, Defendant, Livingston County Sheriff John M. York ("YORK") was and is an employee of Defendants LIVINGSTON COUNTY and LCSO.

5.   Upon information and belief, at all times herein alleged, Defendant RON HUFF was and is employed by Defendants LIVINGSTON COUNTY and LCSO as an Investigator.

6.   Upon information and belief, at all times herein alleged, Defendants BOE LANGLASS, DANIEL RITTENHOUSE, WILLIAM BAKER, ANDREW EICHHORN, and MICHAEL ANNE were and are employed by Defendants LIVINGSTON COUNTY and LCSO as Deputies.

7.   Upon information and belief, at all times herein alleged, Defendant RAY ELLIS was and is employed by Defendants LIVINGSTON COUNTY and LCSO as a Major.

## JURISDICTION

8.   This action is brought forth pursuant to 42 U.S.C. Section 1983,1985 and 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as a result of Defendants' violation of his constitutional civil rights. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and the aforementioned

statutory and constitutional provisions.

9. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §§ 1367(a) to hear and decide claims arising under state law.

10. A written Notice of Claim, sworn to by Plaintiff, was duly served upon Defendants on or about September 1, 2005, within 90 days after plaintiff's claims arose, pursuant to General Municipal Law § 50-e.

11. Defendants disclaimed liability and refused to make any adjustment or payment; at least 30 days have elapsed since the Notice of Claim was presented to said Defendants for adjustment, and Defendants neglected and refused to make any adjustment or payment.

12. All causes of action herein commenced within the limitation period set forth in N.Y. C.P.L.R. § 214.

## FACTS

13. In August, 2004, the Livingston County Court adjudicated Plaintiff as a youthful offender after Plaintiff pled guilty to grand larceny and burglary third for his accomplice role when Plaintiff accompanied another minor who hatched a scheme to take money, alcohol and cigarettes from the Hemlock Sports Club of which his grandfather was a member and two other Livonia/Hemlock establishments.

14. As a result, Plaintiff entered a substance abuse rehabilitation program and was subject to probation, the terms of which he ultimately violated by failing a drug screen and traveling to Naples, Florida without prior written permission; bench warrants issued for his arrest from both Drug Treatment Court and the County Court.

15. Authorities in Livingston County notified the warrant squad in Collier County,

Florida regarding Ryan Duryea's outstanding bench warrants; on or about May 19, 2005, Plaintiff was arrested and held in the Collier County Jail until June 7, 2005.

16. Plaintiff cooperated and signed the Waiver for his extradition from the State of Florida to the State of New York.

17. Deputy RITTENHOUSE and Investigator HUFF arrived at the Collier County Jail at approximately 2:00 p.m. on June 7, 2005 to transport Plaintiff back to New York.

18. Again, Plaintiff cooperated in his transport from the Collier County Jail to Fort Myers Airport to Rochester Airport with a brief layover in New Jersey.

19. While en route, the officers repeatedly questioned Plaintiff regarding a series of church burglaries threatening him that, "the judge will stick it to your ass if you can't give us information" despite Plaintiff's truthful responses that he knew nothing about these crimes. This interrogation occurred without the benefit of any prior Miranda warnings.

20. By approximately 11:00 p.m. on June 7, 2005, Investigator HUFF and Deputy RITTENHOUSE arrived in Livingston County and were transporting Plaintiff to the Livingston County Jail on Court Street in the Town of Geneseo, State of New York.

21. During this final leg of the trip, the officers taunted Plaintiff saying that he would "probably going to get 5 to 10 years" for his probation violation.

22. Shortly before arriving at the jail, when Plaintiff had been trying to loosen his seatbelt, one of the handcuffs on him came loose. When he told the officers about it, Deputy RITTENHOUSE responded, "You dumb ass." However, Deputy

4

RITTENHOUSE made absolutely no effort to correct the situation by securing the handcuffs.

23.  Then as they pulled up to the jail, Deputy RITTENHOUSE once more taunted Plaintiff by remarking, "Well, welcome to your new way of life for the next few years."

24.  After being cooperative in the lengthy transport process, Ryan became panicked by the officers' repeated statements about a lengthy sentence, opened up the unlocked door and ran.

25.  Upon information and belief, as Deputies pursued Ryan, Deputy LANGLESS's glasses fell from his face and he stomped on his own glasses breaking them.

26.  Deputy RITTENHOUSE caught Plaintiff and "body slammed" him to the ground, saying, "You fucked up now, you dumb mother fucker."

27.  At that time, another car pulled up, and Plaintiff felt punches on the back of his head. Although he could not see who was doing it, upon information and belief, Plaintiff believes it was Deputy RITTENHOUSE and Deputy LANGLESS who punched him.

28.  Also, one officer kicked Plaintiff on his right side, giving him a "kidney punch," which caused him to have blood in his urine the next day.

29.  When the officers flipped Plaintiff around, Investigator HUFF grabbed him by the throat.

30.  Deputy RITTENHOUSE punched him directly in the face, smashing his nose.

31. Investigator HUFF punched him on the left side of his forehead and choked Plaintiff to the point of unconsciousness.

32. Then, the officers cuffed Plaintiff and attempted to throw him into a police car, but instead the officers smashed the top right of his head against the car, causing further injuries. Because Plaintiff is almost 6' 5", his head did not fit into the car. Oblivious to the fact that they were butting Plaintiff's head against the car, the inattentive officers mistakenly believed that he was resisting arrest, but he was not.

33. When the officers arrived at "intake" with Plaintiff, Deputy RITTENHOUSE pulled Plaintiff from the car and slammed him repeatedly on the trunk of the car, calling him a "dumb ass."

34. During this further assault, other officers stood by and watched including Deputy BAKER, Investigator HUFF, and others.

35. As officers roughly dragged the barefoot Plaintiff up the stairs, Plaintiff repeatedly fell.

36. Deputy RITTENHOUSE said to him at that time, "You're fucking going to prison for life—your girlfriend will be married and have kids by the time you get out."

37. When Plaintiff arrived at the booking room, he was punched and choked. Deputies turned off the lights and continued to beat him.

38. As Plaintiff was being booked, he overheard Investigator HUFF direct Corporal Labanski to allow **"no visits, no phone calls"** for Plaintiff.

39. When Plaintiff then asked if he could call his lawyer, Investigator HUFF denied this request, **"You ain't callin' nobody, not your fuckin' lawyer or anybody."**

40.   Plaintiff also requested a doctor because he thought he might have a concussion and broken nose, as well as other injuries.

41.   However, with deliberate indifference to Plaintiff's medical condition, the LCSO continually refused his requests to see a doctor.

42.   The LCSO also continued to refuse Plaintiff's requests to speak to his attorney.

43.   In the morning on June 8, 2005, a "trustee" inmate was instructed to clean the booking room and dispose of a bloodied, broken chair.

44.   On June 10, 2005, Deputy LANGLESS went to Pearle Vision Center to replace his glasses with comparable frames but better lenses than his previous pair. The cost of this replacement pair was $89.00. The original pair cost $113.00 in 2003.

45.   On June 13, 2005, Major ELLIS questioned Plaintiff, without any attorney present, and without obtaining any waiver of Plaintiff's constitutional rights, and obtained a statement from Plaintiff, in which he describes what occurred on the evening of June 7, 2005.

46.   On June 15, 2005, Deputy LANGLESS returned to Pearle Vision Center and informed the optometrist that his supervisor had told him to get a more expensive pair of glasses. At that time, Deputy LANGLESS ordered a pair of glasses worth $357.00, but with the cost of the eye exam and discounts available to all customers the Deputy only paid a replacement cost of $242.00. Despite the replacement cost still being less than $250.00, Deputy LANGLESS pursued a felony Criminal Mischief charge against Plaintiff.

47.    Shortly thereafter, on June 15, 2005, certain Supporting Depositions relating to the June 7, 2005 incident, dated June 8, 2005, were amended to negate Plaintiff's claims, and to fabricate allegations against Plaintiff which are not true. Specifically, Deputy LANGLESS signed a new Supporting Deposition on June 15, 2005, which adds to it information not contained in the Supporting Deposition executed on June 8, 2005, purportedly explaining how Plaintiff smashed his nose on a truck when he was running, and that he was resisting having the handcuffs placed on him.

48.    Also, on June 15, 2005, Plaintiff's parents met with Sheriff York, who told them that, "What your son alleges is bullshit."

49.    Thereafter, Plaintiff was indicted on five charges: (1) Escape in the 2d Degree, a Class E Felony; (2) Resisting Arrest, a Class A Misdemeanor; (3) Criminal Mischief in the 3rd Degree, a Class E Felony (for allegedly intentionally damaging Deputy Langless' glasses with a replacement cost of over $250.00); (4) Criminal Mischief in the 4th Degree, a Class A Misdemeanor (for allegedly recklessly damaging Deputy RITTENHOUSE's suit); and (5) Assault in the 2d Degree, a Class D Felony (against Deputy LANGLESS).

50.    Deputy LANGLESS in charging Plaintiff with a Felony count of Criminal Mischief had replaced his broken glasses for under $250.00. But upon information and belief, Deputy LANGLESS purchased a second set of glasses in order to elevate the Criminal Mischief charge from a Misdemeanor to a Felony.

51.    Further, Deputy LANGLESS charged Plaintiff with Assault in the 2d Degree, a Class D Felony, despite the fact that this Deputy had previously issued two separate statements regarding the incident which made no mention whatsoever of any physical

injury or substantial pain and said Deputy never sought medical treatment from a doctor or nurse for this alleged injury or pain.

52. After a jury trial in which Stephen Sessler, Esq., represented Plaintiff, the jury found Plaintiff **NOT GUILTY** of the following counts:

- Criminal Mischief in the 3rd Degree, a Class E Felony (for allegedly intentionally damaging Deputy Langless' glasses);
- Criminal Mischief in the 4th Degree, a Class A Misdemeanor (for allegedly recklessly damaging Deputy RITTENHOUSE's suit); and
- Assault in the 2d Degree, a Class D Felony (against Deputy LANGLESS).

53. Plaintiff was found guilty of Escape in the 2d Degree, a Class E Felony and Resisting Arrest, a Class A Misdemeanor.

54. While Plaintiff was incarcerated, he did not receive prompt medical treatment for his nose.

55. After five days in the Livingston County Jail, a physician within the jail examined Plaintiff and stated that Plaintiff's nose was broken but that any attempt to reset the nose at that time could do more damage than good.

56. Plaintiff DURYEA sustained injuries which include, but are not limited to: scars and lacerations to the face, permanently disfigured nose, breathing difficulties, false arrest, malicious prosecution, emotional stress, public embarrassment and humiliation, loss of reputation, pain, suffering and attorney's fees.

## COUNT I
## BATTERY

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if set forth herein.

58. Defendants battered Plaintiff when they intentionally pummeled, kicked, dragged and choked Plaintiff's body in an offensive manner.

59. Upon information and belief, Defendant County of Livingston and LCSD subsequently ratified this battery as demonstrated by Plaintiff's subsequent arrest and prosecution.

60. That by the reason of the aforementioned, Defendants caused Plaintiff to suffer severe psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation, and physical injury.

61. As a result of the aforementioned conduct of Defendants, Plaintiff suffered scars and lacerations to the face, permanently disfigured nose, breathing difficulties, pain, suffering, and was otherwise injured, thereby causing the damages that are the subject of this Complaint.

## COUNT II
## EXCESSIVE FORCE

62. Plaintiff repeats and realleges paragraphs 1 through 61 as if set forth herein.

63. Defendants used excessive force against Plaintiff in that the force applied against Plaintiff was not the minimum amount necessary to maintain and restore discipline but rather force was used maliciously and sadistically to cause harm resulting in Plaintiff's injuries.

64. That by the reason of the aforementioned, Defendants caused Plaintiff to suffer severe psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation, pain, suffering and physical injury.

65. As a result of the aforementioned conduct of Defendants, Plaintiff suffered

scars and lacerations to the face, permanently disfigured nose, breathing difficulties, pain, suffering, and was otherwise injured, thereby causing the damages that are the subject of this Complaint.

66.     By reason of the foregoing, Plaintiff has been damaged and seeks damages in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

## COUNT III
## FALSE ARREST

67.     Plaintiff repeats and realleges paragraphs 1 through 66 as if set forth herein.

68.     Upon information and belief, at the time of Plaintiff's arrest by Defendants, there was no legally obtained evidence which would have supported the aforementioned charges against him - Criminal Mischief in the 3rd Degree, a Class E Felony (for allegedly intentionally damaging Deputy Langless' glasses); Criminal Mischief in the 4th Degree, a Class A Misdemeanor (for allegedly recklessly damaging Deputy RITTENHOUSE's suit); and Assault in the 2d Degree, a Class D Felony (against Deputy LANGLESS).

69.     The arrest of Plaintiff on the aforementioned charges was not pursuant to a warrant and was not otherwise privileged.

70.     Plaintiff was aware of his arrest, custody and confinement for the above charges, and did not consent thereto.

71.     Defendants illegally placed Plaintiff in a holding cell, in which he was neither allowed to leave, nor to give notice to anyone of his confinement, nor to receive medical attention.

72.     Instead, Defendants repeatedly interrogated Plaintiff in the absence of counsel, despite his specific request for counsel and did not bring Plaintiff promptly before a judge as is appropriate under the terms of a bench warrant.

73.     That by reason of the aforementioned, Defendants caused Plaintiff to suffer severe psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation, and loss of reputation.

## COUNT IV
## MALICIOUS PROSECUTION

74.     Plaintiff repeats and realleges paragraphs 1 through 73 as if set forth herein.

75.     Defendants commenced criminal proceedings against Plaintiff charging him with Criminal Mischief in the 3rd Degree, a Class E Felony (for allegedly intentionally damaging Deputy Langless' glasses); Criminal Mischief in the 4th Degree, a Class A Misdemeanor (for allegedly recklessly damaging Deputy RITTENHOUSE's suit); and Assault in the 2d Degree, a Class D Felony (against Deputy LANGLESS).

76.     The jury found Plaintiff NOT GUILTY on these counts thus terminating the proceeding in favor of the accused on these counts.

77.     Defendants lacked probable cause for charging Plaintiff in the criminal proceeding with two counts of Criminal Mischief and on count of Assault.

78.     Defendants exhibited actual malice in charging Plaintiff with two counts of Criminal Mischief and one count of Assault.

79.     Deputy LANGLESS in charging Plaintiff with a Felony count of Criminal Mischief had replaced his broken glasses for under $250.00. But upon information

and belief, Deputy LANGLESS purchased a second set of glasses in order to elevate the Criminal Mischief charge from a Misdemeanor to a Felony.

80. On June 15, 2005, certain Supporting Depositions relating to the June 7, 2005 incident, dated June 8, 2005, were amended to negate Plaintiff's claims, and to fabricate allegations against Plaintiff which are not true.

81. Deputy LANGLESS signed a new Supporting Deposition on June 15, 2005, which added information not contained in the Supporting Deposition executed on June 8, 2005, purportedly explaining how Plaintiff smashed his nose on a truck when he was running, and that he was resisting having the handcuffs placed on him.

82. As a result of such malicious prosecution, Plaintiff suffered emotional distress, nervousness, anxiety, embarrassment, humiliation, and Plaintiff was forced to incur legal fees.

83. By reason of the foregoing, Plaintiff has been damaged and seeks damages in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

## COUNT V
## NEGLIGENCE – NEGLIGENT HIRING, TRAINING & SUPERVISION

84. Plaintiff repeats and realleges paragraphs 1 through 83 as if set forth herein.

85. Upon information and belief, Defendants, LIVINGSTON COUNTY and LCSO had a duty to adequately train and supervise its deputies and other employees in search, seizure and arrest procedures and breached said duty.

86. Plaintiff asserts that the employers of the individual members of the

LCSO knew, or should have known, of their violent tendencies and their inadequacies, incompetence, and haphazard performance of their duties; and failed to adequately supervise them during their employment and negligently placed them in such a sensitive position of employment, without adequate or proper training, supervision or control.

87. LIVINGSTON COUNTY and LCSO have tolerated and permitted a pattern of illegal and unconstitutional assaults, battery, excessive use of force, violence, denial of the right to counsel, denial of medical attention and other illegal actions and violations of the civil rights of arrestees, and have failed to maintain a proper system for reviewing such conduct by employees of the LIVINGSTON COUNTY and LCSO, with the result that employees including Deputies, Investigators and Majors were encouraged to believe that they could violate the rights of persons such as plaintiff with impunity.

88. The aforementioned acts of the members of LCSO directly and proximately resulted from the failure of the Defendants LIVINGSTON COUNTY and LCSO to properly train, hire and supervise its personnel.

89. Such failure to adequately train and supervise its police officers was the cause of the members of the LCSO wrongfully arresting, using excessive force and maliciously prosecuting Plaintiff, thereby causing the injuries and damages that are the subject of this Complaint.

90. This custom or policy of Defendants, LIVINGSTON COUNTY and LCSO, caused Plaintiff to be subjected to a denial of his constitutional rights in direct violation of the provisions of 42 U.S.C. § 1983.

91.     As a result of such negligent failure to supervise, Plaintiff has suffered severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, humiliation, pain, suffering and physical injury, and Plaintiff was forced to incur legal fees.

92.     As a result of the aforementioned conduct of Defendants, Plaintiff suffered scars and lacerations to the face, permanently disfigured nose, breathing difficulties, pain, suffering, and was otherwise injured, thereby causing the damages that are the subject of this Complaint.

93.     By reason of the foregoing, Plaintiff has been damaged and seeks damages in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

94.     Plaintiff repeats and realleges paragraphs 1 through 93 as if set forth herein.

95.     Individual Defendants, in their capacity as employees of Defendant LCSO, exhibited extreme and outrageous conduct towards Duryea which was intended to cause or was done with a disregard for the substantial probability of causing severe emotional distress.

96.     As a result of Defendant's extreme and outrageous conduct all in violation of constitutional and civil rights of Plaintiff, Duryea suffered his injuries, including, but not limited to, scars and lacerations to the face, permanently disfigured nose, breathing difficulties, pain, and suffering as well as severe psychological

distress, trauma, nervousness, anxiety, public embarrassment, false arrest, and malicious prosecution.

97. The foregoing conduct of Defendant was done intentionally, or with gross indifference to Plaintiff's rights, and was the proximate cause of Plaintiff's resulting emotional distress.

98. By reason of the foregoing, Plaintiff has been damaged and seeks damages in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

99. Plaintiff repeats and realleges paragraphs 1 through 98 as if set forth herein.

100. Defendants violated the provisions of 42 U.S.C. Section 1983 in that, acting under the color of law, they deprived Plaintiff of his rights, privileges and/or immunities pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendment to The United States Constitution, by subjecting him to an unreasonable seizure, denying him due process, subjecting him to self-incrimination and denying him the assistance of counsel denying them due process under the laws of the United States.

101. As a result of Defendant's extreme and outrageous conduct all in violation of Plaintiff's constitutional and civil rights, Plaintiff suffered physical injuries, pain, suffering and severe psychological distress, trauma, nervousness, panic attacks, anxiety, embarrassment, and humiliation.

102. By reason of the foregoing, Plaintiff has been damaged and seeks damages

in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

## COUNT VIII
## CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. §1985

103.     Plaintiff repeats and realleges paragraphs 1 through 102 as if set forth herein.

104.     Defendants violated the provisions of 42 U.S.C. Section 1985 in that, acting under the color of law, they conspired to deprive Plaintiff of his rights, privileges and/or immunities pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendment to The United States Constitution, by subjecting him to an unreasonable seizure, denying him due process, subjecting him to self-incrimination and denying him the assistance of counsel denying them due process under the laws of the United States.

105.     As a result of Defendant's conspiracy to violate Plaintiff's constitutional and civil rights, Plaintiff suffered physical injuries, pain, suffering and severe psychological distress, trauma, nervousness, panic attacks, anxiety, embarrassment, and humiliation.

106.     By reason of the foregoing, the Plaintiff DURYEA has been damaged and seeks damages in excess of the jurisdiction limits of all Courts which would otherwise have jurisdiction.

WHEREFORE, Plaintiff RYAN M. DURYEA demands judgment against Defendants as follows:

A. On the First Cause of Action, in favor of Plaintiff, in the amount of One Million

Dollars ($1,000,000.00);

B. On the Second Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

C. On the Third Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

D. On the Fourth Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

E. On the Fifth Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

F. On the Sixth Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

G. On the Seventh Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

H. On the Eighth Cause of Action, in favor of Plaintiff, in the amount of One Million Dollars ($1,000,000.00);

I. In favor of Plaintiff in the amount of One Million Dollars ($1,000,000.00) as punitive damages against the individual members of the Livingston County Sheriff's Office;

J. That reasonable attorneys' fees be awarded to Plaintiff pursuant to the Civil Rights Attorneys Fees Act of 1976, and 42 U.S.C. Section 1988;

K. That Plaintiff be awarded the costs and disbursements of this action; and

L. For such other and further relief as to this Court may seem just and proper.

**PLEASE NOTE:   PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Dated: August 14, 2006

_____
Jeffrey Wicks, Esq.
JEFFREY WICKS, PLLC
36 West Main Street
Suite 318, Executive Building
Rochester, New York 14614