```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RYAN M. DURYEA,

                         Plaintiff,                    06-CV-6436T

            v.                                         DECISION
                                                       and ORDER
THE COUNTY OF LIVINGSTON, THE LIVINGSTON
COUNTY SHERIFF'S OFFICE, SHERIFF JOHN M.
YORK, INVESTIGATOR RON HUFF, DEPUTY BOE
LANGLESS, DEPUTY DANIEL RITTENHOUSE,
DEPUTY WILLIAM BAKER, MAJOR RAY ELLIS,
DEPUTY ANDREW EICHHORN, DEPUTY MICHAEL
ANNE, AND OTHER KNOWN OR UNKNOWN MEMBERS
OF THE LIVINGSTON COUNTY SHERIFF'S OFFICE,

                         Defendants.
_____
```

## **INTRODUCTION**

Plaintiff Ryan M. Duryea ("plaintiff" or "Duryea") brings this action against the County of Livingston (the "County"), the Livingston County Sheriff's Office ("LCSO"), Sheriff John M. York ("Sheriff York"), Investigator Ron Huff ("Huff"), Deputy Boe Langless ("Langless"), Deputy Daniel Rittenhouse ("Rittenhouse"), Deputy William Baker ("Baker"), Major Ray Ellis ("Ellis"), Deputy Andrew Eichhorn ("Eichhorn"), Deputy Michael Anne ("Anne"), (collectively "defendants"), alleging that the defendants violated his constitutional rights, and that they were otherwise negligent when they took him into police custody on June 7, 2005, due to bench warrants issued for his arrest from both Drug Treatment Court and the County Court. Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), alleging that plaintiff has failed to state a claim upon which relief may be granted and that they are entitled to a dismissal as a matter of law. For the reasons set forth below, defendants' motion to dismiss plaintiff's Complaint is granted as to all defendants except the County of Livingston

dismissing Counts I (battery), II (excessive force), III (false arrest), V (negligent hiring, training and supervision claim), VI (intentional infliction of emotional distress claim), and VIII (§ 1985(3) claim). Defendants' motion to dismiss plaintiff's Complaint with prejudice is granted as to the County of Livingston only as it relates to Counts III and V.

## BACKGROUND

Plaintiff was arrested on bench warrants in the State of Florida. On June 7, 2005, after signing a waiver for his extradition from Florida to New York, defendants Rittenhouse and Huff arrived at the Collier County Jail to transport plaintiff back to New York. According to the Complaint, while en route from Florida to the Rochester Airport, defendants repeatedly questioned plaintiff regarding a series of church burglaries. Plaintiff responded that he knew nothing about the crimes.

At approximately 11:00 p.m. on June 7, 2005 defendants Huff and Rittenhouse arrived in Livingston County and were in the process of transporting plaintiff to the Livingston County Jail by automobile. The Complaint alleges that during this final leg of the trip, the officers taunted plaintiff that he was "probably going to get 5 to 10 years." See Plaintiff's Complaint at ¶ 21. At this point, plaintiff opened up the unlocked door of the automobile and began to run. See id. at ¶ 24. Rittenhouse caught plaintiff and "body slammed" him to the ground. See id. at ¶ 26. Plaintiff claims he heard another car arrive and then he felt punches to the back of his head and a kick to his back. According to the Complaint, Rittenhouse punched plaintiff directly in the face, smashing his nose. See id. ¶¶ 27-30. The defendants cuffed plaintiff and

placed him in a police car. The Complaint states that the defendants dragged the plaintiff while he was barefoot up the stairs in such a manner that plaintiff repeatedly fell. Further, upon arrival in the booking room, defendants punched and choked plaintiff, then turned off the lights and continued the beating. See id. ¶¶ 33-37.

According to the Complaint, during plaintiff's incarceration Huff directed that plaintiff receive no visitors or phone calls and when plaintiff asked if he could call his lawyer, he was told he could not do so. See ¶¶ 39-42. Plaintiff claims he also asked to see a doctor because of his injuries but his requests were continually denied. After five days at the Livingston County Jail, a physician within the jail finally examined plaintiff and stated that his nose was broken. See id. ¶¶ 40 and 55. However, plaintiff was told that any attempt to reset the nose at that time could do more damage than good. See id. In addition, the Complaint indicates that plaintiff's parents met with Sheriff York on June 15, 2005 regarding plaintiff's mistreatment and Sheriff York's response was "What your son alleges is bullshit." See id. ¶ 48.

Plaintiff was indicted for (1) Escape; (2) Resisting Arrest; (3) Felony Criminal Mischief; (4) Misdemeanor Criminal Mischief; and (5) Assault. After trial, plaintiff was found guilty of Escape in the 2d Degree, a Class E Felony and Resisting Arrest, a Class A Misdemeanor. The jury also found plaintiff not guilty of both counts of Criminal Mischief and one count Assault.

Plaintiff filed a timely Notice of Claim pursuant to General Municipal Law § 50-i on September 1, 2005 naming all of the defendants in this law suit. All defendants through counsel examined plaintiff in a hearing pursuant to § 50-h of the General Municipal Law ("50-h") on

January 30, 2006 while plaintiff was incarcerated at the Five Points Correctional Facility in Romulus, New York. On August 25, 2006, plaintiff filed this law suit against defendants in the Western District of New York.

## DISCUSSION

### I. Defendant's Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. Ferran v. Town of Nassau, 11 F.3d 21, 22 (2nd Cir. 1993), cert. denied, 513 U.S. 1014, 115 S.Ct. 572 (1994). The court may grant a Rule 12(b)(6) motion only where "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Plaintiff alleges seven causes of action stemming from the events of June 7, 2005: (1) battery; (2) use of excessive force; (3) false arrest; (4) malicious prosecution; (5) negligent hiring, training and supervision; (6) intentional infliction of emotional distress; (7) denial of plaintiff's civil and constitutional rights in violation of 42 U.S.C. § 1983 including denial of right to counsel and denial of medical attention; and (8) conspiracy to violate civil rights under 42 U.S.C. § 1985.

**II.  Plaintiff's Claims of Battery, Excessive Use of Force, Intentional Infliction of Emotional Distress and Negligent Hiring, Training and Supervision are Untimely Under CPLR 215**

Defendants allege that plaintiff's claims of battery, excessive use of force, intentional infliction of emotional distress and negligent hiring, training and supervision (to the extent it relates to matters that occurred on or before August 24, 2005) are time-barred by the applicable statute of limitations, as provided by the New York Civil Practice Law and Rules ("CPLR") 215. Plaintiff incorrectly asserts that the one year and ninety day statute of limitation pursuant to § 50-i of the General Municipal Law is applicable to the exclusion of CPLR 215(1).

Under CPLR § 215(1), "an action against a sheriff . . . upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty" shall be commenced within one year from the incident giving rise to the suit. See CPLR § 215(1). This statute of limitation applies equally to sheriff's deputies. See Taylor v. Mayone, 626 F.2d 247, 251, n.5 (2d Cir. 1980); Houghton v. Cardone, 295 F.Supp.2d 268 (W.D.N.Y. 2003); see also Kingston v. Erie County, 122 A.D.2d 543 (4th Dept. 1986). However, the statute of limitations for plaintiff's claim against the County is one year and 90 days. Gen. Munic. Law § 50-i(1). Thus, contrary to plaintiff's claims, CPLR § 215(1) provides the statute of limitations for tort claims against a sheriff and his deputies while § 50-I sets forth the limitations period for tort claims against a county. See Fljer v. Cayuga County, 2006 WL 2655698 at *4 (N.D.N.Y. 2006) (granting motion to dismiss state tort law claims against sheriff under CPLR § 215(1) in spite of defendant's requested § 50-h examination).

Here, plaintiff's battery allegation is based upon claims that he was mistreated by the Livingston County Sheriff's Deputies on June 7, 2005 and/or June 8, 2005. See Complaint. Similarly, plaintiff's excessive use of force claim is based on plaintiff's allegation that he was mistreated by the Deputies on June 7, 2005 and/or June 8, 2005. See id. The parties agree that the incidents giving rise to this suit occurred on June 7, 2005 and/or June 8, 2005. Plaintiff commenced this action on August 25, 2006 - more than one year after the limitations period expired.  Thus, plaintiff's battery and excessive use of force claims against the Sheriff's deputies are time-barred, and therefore must be dismissed with prejudice.

Further, plaintiff's negligent hiring, training and supervision claim asserts that the "acts of the [Deputies} ... directly and proximately resulted from the failure of the ... County and LCSO to properly train, hire and supervise its personnel." See Complaint, ¶ 88. The Complaint also alleges that "[s]uch failure to adequately train and supervise its police officers was the cause of the members of the LCSO wrongfully arresting, using excessive force and maliciously prosecuting plaintiff, thereby causing ... injuries and damages[.]" See id., ¶89. Accordingly, to the extent that plaintiff's negligence claims relate to any actions that occurred on or before August 24, 2005, including plaintiff's claims of false arrest, use of excessive force, battery, denial of right to counsel, denial of medical attention, which occurred in June 2005, they are time barred.

Moreover, plaintiff's intentional infliction of emotional distress claim alleges that "Defendants in their capacity as employees of ... LCSO, exhibited extreme and outrageous conduct towards Duryea which was

intended to cause or was done with a disregard for the substantial probability of causing severe emotional distress." See Complaint, ¶ 95. Therefore, to the extent that Plaintiff's intentional infliction of emotional distress claim relates to any action that occurred in June 2005 or anytime on or before August 24, 2005, is barred by the statute of limitations and must be dismissed.

### III. Plaintiff's False Arrest Claim Is Dismissed

It is well settled that a claim for false arrest may not be maintained where a plaintiff's arrest was supported by probable cause. See Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994); Mandina v. City of Yonkers, 1998 WL 637471 at *3 (S.D.N.Y. 1998) ("Probable cause to arrest 'constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.'") (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted). "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." See Cameron v. Fogarty, 806 F.2d 380 (2d Cir. 1986); see also Broughton v. State, 37 N.Y.2d 451 (1975), cert. denied, 423 U.S. 929 (1975) ("[A] conviction which survives appeal would be conclusive evidence of probable cause.")

It is also well established that the existence of probable cause as a matter of law as to some of the crimes that a plaintiff is charged with on the day of his arrest legitimizes the arrest and serves as an absolute bar to a claim for false arrest. See Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006); Ostroski v. Town of Southold, 443 F.Supp.2d 325 (E.D.N.Y. 2006). In this case, plaintiff's false arrest claim is based on the assertion that his arrest on June 7, 2005 for the charges of felony

criminal mischief, misdemeanor criminal mischief and assault was allegedly improper and without probable cause in that he was not ultimately convicted of these charges. See Complaint, ¶¶ 68-69. However, plaintiff admits and no dispute exists that plaintiff was found guilty after a jury trial of the charges of Escape in the 2nd Degree, a Class E Felony and Resisting Arrest, a Class A Misdemeanor in connection with his June 7, 2005 arrest. See Exhibit B to Frank V. Balon's Affirmation In Support of Motion to Dismiss - Certificate of Conviction and Judgment. Accordingly, plaintiff's conviction conclusively establishes as a matter of law that probable cause existed for his arrest and the fact that he was acquitted of certain charges does not change that conclusion. Further, plaintiff has failed to address this point in his opposition to defendants' motion to dismiss and therefore, has abandoned his false arrest claim. See Curto v. Bender, 2005 WL 724156 *16 (W.D.N.Y. 2005) (noting that plaintiff failed to address, and thus presumably conceded, a point raised by defendant's motion to dismiss); Barmore v. Aidala, 419 F.Supp.2d 193, 201-02 (N.D.N.Y. 2005) (Failure to oppose motion to dismiss a claim is deemed abandonment of claim). Thus, plaintiff's false arrest claim is dismissed.

### IV.    Plaintiff's Negligent Hiring, Training and Supervision Claims

In plaintiff's fifth cause of action he claims that the County and LCSO violated § 1983 by violating his civil and constitutional rights as a result of the negligent hiring of the deputies and the inadequate training and supervision of the deputies. Plaintiff merely alleges that the County and the LCSO "knew, or should have known, of their violent tendencies and their inadequacies, incompetence, and haphazard performance of their duties; and failed to adequately supervise them

during their employment and negligently placed them in such a sensitive position of employment[.]" Defendants respond that the negligent hiring, training and supervision claim fails because the allegations are conclusory and the claims upon which they are based are patently insufficient to survive a motion to dismiss.

Claims of negligent hiring, inadequate training and supervision will trigger municipal liability[1] under § 1983 only where "the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. See City of Canton, Ohio v. Harris 489 U.S. 378, 388 (1989). The Supreme Court explains that "deliberate indifference" requires that municipal policymakers made a "deliberate choice ... from among various alternatives" not to fully train employees. Id. at 389. "Such a deliberate choice could be shown where in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." See Walker v. City of New York, 974 F.2d 293, 297 (2d Cir.1992).

Here, plaintiff offers only bare assertions to support his claim that the County and the LCSO improperly hired, trained and supervised the deputies and other employees. See Complaint, ¶¶ 85-89. Moreover,

---

[1] To state a claim against a County and/or a Sheriff's Department based upon allegations that a plaintiff was injured by acts of deputies, plaintiff must assert that the actions and/or constitutional deprivations resulted from a municipal policy or custom. See Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997). Moreover, it is well settled that conclusory allegations of a municipal policy or custom are patently insufficient to state a claim. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.")

plaintiff offers no evidence from which a jury may infer that the County or LCSO acted with deliberate indifference to a need for more or different training of the deputies. In fact, there is no dispute that the conclusory allegations upon which plaintiff's negligent hiring, training and supervision are based are insufficient to state a claim against the County or the LCSO. Moreover, plaintiff once again does not address this point in his opposition to defendants' motion to dismiss and thus has abandoned these allegations. See Curto, 2005 WL 724156 at *16; Barmore, 419 F.Supp.2d at 201-02. Accordingly, plaintiff's fifth cause of action is dismissed.

### V.      Plaintiff's § 1985(3) Conspiracy To Violate Civil Rights Claim

Defendant argues that plaintiff's conspiracy claim must be dismissed for its failure to state a cause of action. Plaintiff responds that Fed. R. Civ. P. 8(a), 8(f) and 9(b) allows for pleadings to be construed generally. However, notwithstanding these rules, the Second Circuit has held that to state a claim under 42 U.S.C. § 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." See Webb v. Goord, 340 F.3d 105 (2d Cir. 2003) (citation omitted) (Court held conspiracy allegation must fail because plaintiffs' have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants); Maier v. Phillips, 205 F.3d 1323 (2d Cir. 2000) ("complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss).

Here, the claim alleges in very general terms that "defendants violated ... 42 U.S.C. Section 1985 in that, acting under the color of law, they conspired to deprive Plaintiff of his rights, privileges and/or immunities pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendment to The United States Constitution, by subjecting him to self-incrimination and denying him the assistance of counsel[.]" Indeed, the Complaint does not even allege a "meeting of the minds."[2] Consequently, plaintiff's conspiracy to violate civil rights claim must be dismissed.

### VI. Claims Against Sheriff York Is Dismissed

Defendants contend that the allegations in the complaint fail to show Sheriff York's personal involvement in the alleged constitutional violations. A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001); Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in

---

[2] Plaintiff has failed to state a § 1985(3) claim by failing to allege two or more conspirators because the individual defendants are deemed to be one party under the intra-corporate conspiracy doctrine. See Ferlito v. City of Oswego, 2006 WL 2238939 at *12 (N.D.N.Y. 2006) ("The intra-corporate conspiracy doctrine applies to individual defendants who are members of the same police department"); Griffin-Nolan v. Providence Washington Ins. Co., 2005 WL 1460424 at *11 (N.D.N.Y. 2005) (dismissing § 1985(3) claim under F.R.C.P. 12(b)(6) based on the intra-corporate conspiracy doctrine because all defendants were Syracuse police officers.)

supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir.1986). A "plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority" within the relevant governmental agency or department. See Burgess v. Morse, 259 F.Supp.2d 240, 248 (W.D.N.Y.2003).

Here, the only allegation made against York is in paragraph 48 of the Complaint where plaintiff alleges that "on June 15, 2005, Plaintiff's parents met with [him and he] told them that, `What your son alleges is bullshit.'" See Complaint, ¶ 48. Other than this conclusory allegation, there is no factual basis established to demonstrate York's personal involvement. Accordingly, the complaint fails to allege personal involvement by York in the alleged deprivations, and therefore plaintiff's § 1983 claims against him is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Counts III, V and VIII of the Complaint as against all defendants is granted, and those claims are dismissed with prejudice. Defendants' motion to dismiss Counts I, II, and VI of the Complaint against defendants Livingston County Sheriff's Office, Sheriff John M. York, Investigator Ron Huff, Deputy Boe Langless, Deputy Daniel Rittenhouse, Deputy William Baker, Major Ray Ellis, Deputy Andrew Eichhorn and Deputy Michael Anne, is granted, and those Counts are dismissed with prejudice.

For purposes of clarity, Counts IV (malicious prosecution) and VII (§ 1983 claim) remain pending against all defendants, and Counts I (battery), II (excessive force), and VI (intentional infliction of emotional distress claim) remain pending against the County of Livingston.[3]

    ALL OF THE ABOVE IS SO ORDERED.

                                         s/Michael A. Telesca
                                           MICHAEL A. TELESCA
                                           United States District Judge

Dated:     Rochester, New York
           April 26, 2007

---

[3] On January 11, 2007, defendants raised a new issue in their reply brief dealing with the Eleventh Amendment Immunity. In response, plaintiff requested the Court to allow plaintiff the opportunity to file a sur-reply in response to defendants' newly raised issue. By letter dated January 12, 2007, I informed both counsel that I would decide the motion to dismiss based only on the grounds asserted in their main brief and their reply briefs. As I previously noted, the fact that defendants raised a new issue in their reply brief is improper practice. See Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir.1999) ("[N]ew arguments may not be made in a reply brief."). Moreover, local rules prohibit sur-reply papers. See Rule 7.1(c) ("Sur-reply papers shall not be permitted unless a party is directed otherwise by the Court"). Thus, this matter was deemed submitted as of January 11, 2007 without further briefing.