```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RYAN M. DURYEA

                    Plaintiff,              06-CV-6436

          v.
                                            DECISION AND ORDER
THE COUNTY OF LIVINGSTON, et al.

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Ryan M. Duryea ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1983 and New York state law, alleging various claims arising out of his arrest and transfer to Livingston County Jail on June 7, 2005. Several of Plaintiff's claims were dismissed by this Court in a Decision and Order dated April 26, 2007. What remains is a claim for malicious prosecution (Count IV) and claims asserted pursuant to § 1983 (Count VII) for violations of the Fourth, Fifth, Sixth and Fourteenth Amendments[1], against the County and the remaining individual defendants.[2] Plaintiff's state

---

[1] Plaintiff specifically claims that he was subjected to excessive force during his arrest; that the Defendants twice subjected him to questioning without *Miranda* warnings in violation of his Fifth Amendment right to freedom from self incrimination; that the Defendants denied him the assistance of counsel while he was a pre-trial detainee; and that the Defendants denied him adequate medical care while he was held at the Livingston County Jail.

[2] The Court notes that Plaintiff's claim for excessive force, while alleged separately in the Complaint as Count II, is brought under § 1983 (Count VII) according to the Plaintiff's motion papers, which discusses the claim pursuant to the Fourth Amendment standards. Pl. Mem. Of Law. at 8, Docket No. 47. Therefore it remains pending against both the County and the

law claims for battery and intentional infliction of emotional distress also remain pending against the County.

Defendants now move for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants contend, *inter alia*, that the Plaintiff has not pointed to any genuine issues of material fact and that they are entitled to judgment as a matter of law. Plaintiff opposes Defendants' Motion. For the reasons set forth herein, this Court grants in part and denies in part Defendants' motion.

## BACKGROUND

The following material facts are taken from the parties' submissions in connection with this motion and the record in the case. (Docket No. 44; 47-56). Plaintiff was arrested pursuant to a bench warrant in Collier County, Florida on May 19, 2005, after failing to follow the terms of his probation relating to an August 2004 guilty plea. Plaintiff was held in Collier County Jail until June 7, 2005, when Defendants Deputy Sheriff Daniel Rittenhouse and Investigator Ron Huff from the Livingston County Sheriff's Department traveled to Florida to transport the Plaintiff back to Livingston County, New York.

Following a flight from Florida to Rochester, New York, Huff and Rittenhouse drove the Plaintiff to the Livingston County Jail. Plaintiff states that during this drive, Huff and Rittenhouse

---

individual defendants.   Accordingly, Count II is hereby dismissed as duplicative of Count VII.

questioned him about certain church burglaries, but Plaintiff stated he was not involved. Plaintiff was not further questioned about the church burglaries or charged with any crime related to a church burglary.

While seated in the backseat, Plaintiff's hands came free of his handcuffs and he noticed that the back door of the car was unlocked.  When the car stopped just before entering the jail, Plaintiff opened the door and ran from the car.  Huff, Rittenhouse and Defendant Deputy Boe Langless, who was on patrol that night, pursued Plaintiff to a nearby service station, where he was apprehended. Defendant Deputies Andrew Eichhorn, Michael Anne, and William Baker also came to the scene to assist in apprehending and re-arresting Plaintiff.

The record is unclear as to the amount of force applied to place Plaintiff in custody.  The officers indicate that Plaintiff who was physically resisting arrest, was taken to the ground with his head held on the ground, a gravel surface, and that Plaintiff was forcibly handcuffed and placed in a police car to be transported back to the jail. One of the Deputies also claims that Plaintiff kicked him in the face, knocking his glasses to the ground.  The Deputy's glasses were later found broken.  Plaintiff contends that he was thrown to the ground, choked, hit repeatedly in the back of the head, punched directly in the nose by Defendant Rittenhouse, kicked in the side of his body and later dragged up

the stairs inside the jail while the Deputies transported him to intake. Plaintiff was then booked, showered, photographed and confined in the Livingston County Jail.

Plaintiff was seen on the morning of June 8, 2005 by Livingston County Jail Nurse, Kathy Link. She noted abrasions on the side of his face, neck and elbows and a laceration on the bridge of his nose. His pulse, blood pressure and pupil dilation were normal. Plaintiff, at the time, was in a suicide smock and Nurse Link noted that he was very angry and that he did not want to be seen by her at that time. She advised Plaintiff to clean his wounds with soap and water.

Plaintiff later saw Dr. Richard Aguirre at the jail on June 13, 2005. He noted that Plaintiff complained of orange colored urine, and he questioned whether this may be blood. However, a urinalysis was negative. He noted swelling in the nasal bridge, without orbital rim stepoffs or gross irregularity, and head abrasions. He ruled out a nasal fracture based on his physical exam. Later, at his deposition, he was shown pictures of the Plaintiff taken while he was at the jail. He additionally noted black and blue eyelids and redness on the throat after viewing the photographs. Later, in June 2006, Plaintiff saw an otolaryngologist, Dr. John Sheilds, who stated that Plaintiff reported a history of trauma to the face, but that he did not find evidence of a prior fracture to the nose. Dr. Shields' reported

that Plaintiff had a mild/moderate deviation of the nasal septum, but he testified that he could not conclude from the x-rays or CT scans when the deviation occurred.

Sometime between June 7 and June 13, Plaintiff filed a grievance, using the appropriate grievance procedures with the Livingston County Jail, relating to his claim that the sheriff's deputies used excessive force in apprehending and arresting him on June 7, 2005. On June 13, Defendant Major Ray Ellis met with the Plaintiff to discuss this complaint. Plaintiff did not request his lawyer to be present when he spoke with Major Ellis, but Plaintiff refused to sign a statement drafted by Major Ellis after the meeting without consulting with his lawyer.

On June 8, 2005, accusatory instruments were filed against Plaintiff and he was later indicted by a grand jury on charges of escape, resisting arrest, assault, and two counts of criminal mischief. The trial court judge dismissed the charge of criminal mischief in the fourth degree for lack of evidence and ruled that Plaintiff had not produced evidence to support his claim that any statements made during the June 13 interview were the product of coercion, physical duress or legal compulsion, or that his right to counsel. A jury later convicted Plaintiff of escape in the second degree and resisting arrest. He was acquitted of assault in the second degree and criminal mischief in the third degree. The charge of criminal mischief in the fourth degree related to a

deputy's pants being damaged when he fell chasing the Plaintiff and the assault and criminal mischief in the third degree related to Plaintiff's allegedly having kicked Deputy Langless while resisting arrest, knocking his glasses off, which were later found broken.

## **DISCUSSION**

### I.  **Standard of Review of a Motion for Summary Judgment**

Summary judgment is appropriate where the court determines "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 380 (2007). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998), but must affirmatively "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e). To discharge this burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); see also D'Amico v. City of New York, 132 F.3d 145, 149

(2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")).

**II. Claims against the County**

A plaintiff who seeks to recover under § 1983 against a municipality or employees of a municipality sued in their official capacities must show that a constitutional violation resulted from a municipal policy or custom. See Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 694 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004)(superseded in part on other grounds by the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, amending 42 U.S.C. § 1981)). This analysis applies equally to individual defendants who are sued in their official capacity, as "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself." See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir.2007).

"To establish the existence of a municipal policy or custom, the plaintiff must prove: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's [rights]; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied

on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." See Prowisor v. Bon-Ton, Inc., 426 F.Supp.2d 165, 174 (S.D.N.Y. 2006) aff'd 232 Fed. Appx. 26 (2d Cir. 2007). "A failure to supervise claim requires allegations as to the violation itself and policymakers' reaction to it, [and] a failure to train claim...requires evidence as to the city's training program and the way in which that program contributed to the violation." See Amnesty America v. Town of West Hartford, 361 F.3d (2d Cir. 2004). A policy or custom cannot be established based solely on the single incident alleged in the complaint, absent other evidence suggesting that the municipality is in some way responsible for the alleged conduct. See Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008).

 Plaintiff makes only conclusory allegations that the County should be held liable under § 1983 for the failure to train or supervise its employees, which resulted in the alleged unconstitutional acts. He does not point to a specific deficiency in the County's training program or to how policymakers failed to properly supervise or react to certain deficiencies. Nor does Plaintiff establish how any violation is related to his injury. A review of the entire record reveals that the Plaintiff has not presented any evidence of a policy or custom, other than his own

conclusory statements.  Accordingly, the claims against the County and any claims against the individual defendants in their official capacities under § 1983 are hereby dismissed with prejudice.

Plaintiff has not responded to the Defendants' argument that the pending state law claims against the County should also be dismissed because they rest on the theory of respondeat superior. Under New York Law, a county cannot be held liable for the tortious acts of its sheriff's deputies, absent a legislative assumption of responsibility. See Cash v. County of Erie, 2007 WL 2027844 (W.D.N.Y. 2007); see also Barr v. Albany County, 50 N.Y.2d 247, 257 (1980). The record in this case indicates that Livingston County has never assumed liability for the acts of its sheriff's deputies. A claim based on negligent training and supervision is cognizable against a county (see Barr, 20 N.Y.2d at 257), however, as discussed above, Plaintiff has only presented his own conclusory statements that the county negligently failed to train and supervise its employees and his separate claim based on this theory was previously dismissed by this Court for failing to provide non-conclusory allegations.

Accordingly, the remaining state law claims against the County are also hereby dismissed with prejudice.

### III. **Claims against the Individual Defendants**

#### A. **Excessive Force under § 1983**

The standard for a Fourth Amendment claim for excessive force is whether the force used is objectively reasonable under the circumstances. See Landy v. Irizarry, 884 F.Supp. 788, 797 (S.D.N.Y. 1995)(stating that excessive use of force claims are properly analyzed under the Fourth Amendment's objective reasonableness standard)(quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). As stated in Landy, however, "the determination of whether a particular use of force was objectively reasonable requires 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Landy, 884 F.Supp. at 797 (citing Graham, 490 U.S. at 396). Generally, such a determination is a fact intensive inquiry, and is best left for a jury to decide. Calamia v. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989); Landy, 884 F.Supp. at 797; Messina v. Mazzeo, 854 F.Supp. 116, 133-34 (E.D.N.Y. 1994).

Here, Plaintiff states that after he was apprehended, he was thrown to the ground, repeatedly hit in the back of the head, kicked in his side, choked and punched directly in the nose while the Defendants placed him in restraints and in the back of a police

car. Plaintiff also states that he was dragged up the stairs inside the Livingston County Jail. Duryea Aff. at ¶¶ 13-20. The arresting deputies contend that the force used to effectuate the arrest was reasonable, and involved apprehending Plaintiff and handcuffing him while he was on the ground with his head being held to the ground. Def. Statement of Facts at ¶¶ 14-16.

Because the actual amount of force used is in question, the Court finds that there is a material issue of fact with respect to whether the amount of force was reasonable under the circumstances. Specifically, viewing the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could conclude that it was not reasonable to hit Plaintiff repeatedly in the back of the head and directly in the face, choke him, kick him in his side or drag him up the jail steps, after he had already been apprehended and restrained by several officers.

Defendants also argue that they are entitled to qualified immunity on this claim. However, because there is a material issue of fact as to the amount of force used to effectuate the arrest, this Court cannot find that it was objectively reasonable for the deputies to believe that they were not committing a constitutional violation. See Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

### B. Malicious Prosecution

To establish a claim for malicious prosecution under 42 U.S.C. § 1983, Plaintiff must present facts satisfying the following

elements: (1) the initiation of a prosecution without probable cause; (2) the defendant acted with malice; (3) the prosecution terminated in the Plaintiff's favor; and (4) a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." See Rohman v. New York City Transit Authority (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000). "A plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." Id. Plaintiff's malicious prosecution claim under New York state law requires proof of only the first three elements. See Rohman, 215 F.3d at 215.

Here, Plaintiff was held in custody at the Livingston County Jail initially on a bench warrant based on a previous guilty plea and his failure to abide by the conditions of his probation. Plaintiff has not responded to Defendants' argument that he has not satisfied the final element of a § 1983 malicious prosecution claim, a sufficient post-arraignment restraint on his liberty attributable to the abuse of process. Id.; see also English v. Pero, 2011 WL 1302266 (W.D.N.Y. 2011). Nor has the Plaintiff presented evidence from which a reasonable jury could conclude that he was being held on charges for which he was later acquitted, rather than on the bench warrant. Accordingly, Plaintiff's malicious prosecution claim is hereby dismissed with prejudice.

With respect to Plaintiff's state law cause of action for malicious prosecution, Defendant argues that Plaintiff has not established that the prosecution terminated in his favor, because he was convicted of two of the five charges in the indictment. Where a favorable termination in a criminal case occurs on some, but not all, of the charges, those charges must be sufficiently distinct to allow a claim for malicious prosecution. See Brown v. Seniuk, 2002 WL 32096576, *3 (E.D.N.Y. 2002)(citing Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989)). Courts look to whether one charge is a lesser included offenses of another, whether the charges were more or less serious, and whether the actions were directed at the same people. Id. (citing Pichardo v. New York Police Dept., 1998 WL 812049 (S.D.N.Y. 1998).

Here, the charges of which Plaintiff was acquitted or which were dismissed related to conduct directed at the same people - Plaintiff's escape and subsequent resisting arrest, during which one officer fell, damaging his uniform, and another officer was allegedly kicked in the face, damaging his glasses. However, the criminal mischief charges are neither lesser included offenses, nor are they related to the charges resisting arrest or escape considering the elements of the crimes. While the charges of resisting arrest and assault are theoretically similar, the Second Circuit has held that "[t]o hold that an acquittal does not constitute a favorable termination would be particularly

inappropriate...where the charge for which [the plaintiff] was acquitted was more serious than the one for which he was convicted." Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989). Accordingly, the Court finds Defendants' argument to be without merit.

Plaintiff argues that he has established the other elements of the claim, however, the Court finds that Plaintiff has not established the requisite lack of probable cause with respect to two of the charges, assault and criminal mischief in the fourth degree. In New York, an indictment creates a presumption of probable cause that will defeat a claim for malicious prosecution, but such a presumption can be overcome with evidence that the police witnesses gave false or misleading testimony, withheld evidence from a grand jury or otherwise acted in bad faith. Chetrick v. Cohen, 52 A.D.3d 449, 450 (2nd Dept. 2008). Plaintiff has not presented any such evidence with respect to the assault or criminal mischief in the fourth degree charges.

However, Plaintiff presents evidence from which a reasonable juror could conclude that Deputy Langless acted in bad faith with respect to the criminal mischief in the third degree charge. New York Penal Law § 145.05 states that "a person is guilty of criminal mischief in the third degree when, with the intent to damage property of another person...he damages property of another person in an amount exceeding two hundred fifty dollars." Here, Plaintiff

was charged with intentionally damaging Deputy Langless's eyeglasses. Plaintiff presents evidence that Deputy Langless's glasses initially cost $113, that he obtained replacement glasses for $89, but that he was later instructed by his supervisor to return to the store to purchase more expensive frames, making his eyeglasses exceed the $250 threshold. Pl. Exhibit Y-Z. This Court finds that this evidence is sufficient to create a material issue of fact as to whether Deputy Langless acted in bad faith, negating the presumption of probable cause with respect to the charge of criminal mischief in the third degree. Accordingly, Plaintiff's state law malicious prosecution claim for this particular charge remains against Deputy Langless.

### C. Failure to Exhaust

Defendants also argue that Plaintiff has failed to exhaust his remaining claims under § 1983 (failure to provide *Miranda* warnings in his meeting with Major Ellis on June 13[3], inadequate medical care, and failure to allow the use of phones to contact counsel) as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"). The PLRA provides "[n]o action shall be brought with

---

[3]Plaintiff also bases this claim on questioning by Deputies Huff and Rittenhouse about certain church burglaries during the police car ride from the airport. However, Plaintiff was never charged with an offense related to the church burglaries, and he was not questioned further after he informed the Deputies that he did not have any information. There is also no evidence that Plaintiff made any incriminating statements or that such statements that could have been or were used against him in any way. See Deshawn E. by Charlotte E. v. Safir, 156 F.3d 640 (2d Cir. 1998). Accordingly, to the extent his Fifth Amendment claim is based on this questioning, it is hereby dismissed with prejudice.

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Plaintiff exhausted his administrative remedies with respect to his excessive force claim only, having brought a grievance within five days of the alleged wrongdoing, as required by the rules and regulations of Livingston County Jail and New York's Compilation of Codes, Rules and Regulations (9 N.Y.C.R.R. 7032.4).

Plaintiff does not contest that he failed to exhaust his remaining claims, but he argues that he was prevented from exhausting his administrative remedies because he was never issued a copy of the rules and regulations and therefore he apparently was unaware that he was required to file a grievance with respect to his claims.[4] Duryea Aff. at 42.  Plaintiff's contention, however, is belied by the fact that he was able to properly file a grievance on the appropriate forms and within the appropriate time frame for his excessive force claim, and by the fact that his intake papers indicate that he acknowledged in writing having received the rules and regulations at the time he was admitted to the jail.  Further, most of the alleged events occurred either before or within a few

---

[4] In Plaintiff's Memorandum of Law, he also states that he "repeatedly requested a grievance form" but was not provided a form. Pl. Mem. of Law at 17.  Plaintiff does not cite to any evidence in the record which supports this assertion.  Accordingly, the Court will not consider this statement as it is not supported by any evidence in the record.

days of his filing the initial grievance and before his meeting with Defendant Major Ray Ellis to discuss his complaint regarding excessive force. Plaintiff did not discuss the lack of access to the telephone to call counsel (or even ask to speak with counsel), he did not mention the alleged unlawful questioning in the police car regarding the church burglaries, or any alleged inadequacies of his medical care. Plaintiff provides no explanation or evidence supporting his assertion that he was unaware of the proper procedures regarding his remaining claims, when he was aware of the procedures with respect to his excessive force claim and he acknowledged receiving the rules and regulations at intake. Accordingly, the Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that the defendants interfered with his ability to properly file grievances. Johnston v. Maha, 584 F.Supp.2d 612 (W.D.N.Y. 2008), aff'd in pertinent part, 606 F.3d 39, 41 (2d Cir. 2010).

## **CONCLUSION**

For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's claim of excessive force pursuant to 42 U.S.C. § 1983 against the individual defendants who took part in Plaintiff's arrest (Investigator Ron Huff, Deputy Boe Langless, Deputy Daniel Rittenhouse, Deputy William Baker, Deputy Andrew Eichhorn, and Deputy Michael Anne) in their individual capacities, remains

against those defendants.[5] Plaintiff's state law claim for malicious prosecution based on the criminal mischief in the third degree charge against Deputy Langless also remains. The remaining claims in the Complaint against all defendants are hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/ Michael A. Telesca
                                     MICHAEL A. TELESCA
                                  United States District Judge

Dated:   Rochester, New York
         January 19, 2012

---

[5] The Complaint does not indicate the individual defendants against whom this particular claim is brought, but the factual allegations and the record reveal that only these defendants participated in the apprehension and arrest of Plaintiff. Accordingly, the Court construes this claim as being brought against only these individual defendants.